U.S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

NOV 2 0 2007

CHRIS R. JOHNSON, CLERK

BY DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JAMES SANDERS PLAINTIFF

V. CASE NO. 07-3059

NORTHERN LEASING SYSTEMS, INC. DEFENDANT

**COMPLAINT**

Comes now Plaintiff, James Sanders ("Sanders"), for his complaint against Defendant, Northern Leasing Systems, Inc. ("Northern"), and states:

1. This is an action under the Fair Credit Reporting Act ("FCRA") §623(b) (15 U.S.C.A. §1681s-2(b)) with pendent claims for the torts of outrage and defamation.

2. Sanders is a resident of Ouray, Colorado.

3. Northern is a corporation with its principal place of business in New York City, New York, that conducts business in the Western District of Arkansas.

4. This Court has subject matter jurisdiction pursuant to 15 U.S.C. §1681p.

5. This Court has personal jurisdiction over the parties. Sanders was a resident of this judicial district at the time of the events complained of herein. Northern conducts business in this judicial district, and acted in a forum-related activity in this judicial district by violating the FCRA while being aware that Sanders resided in this judicial district. The events that form the basis of this Complaint occurred in this judicial district and venue is appropriate in this Court under 28 U.S.C.A. §1391 because Northern is subject to personal jurisdiction.

**Facts**

6. On or about November 29, 2004, Sanders became aware that Northern had made unauthorized charges to his bank account.

7. Upon inquiry to Northern by Sanders, Sanders was provided with a copy of an Equipment Finance Lease ("Lease") that he had allegedly entered into with Northern. A copy of the Lease is attached hereto as Exhibit "A" and incorporated herein by reference.

8. On the Lease, the business address, phone number, and home address were incorrect, and the signature had been forged.

9. Sanders notified Northern of these discrepancies by way of a fax dated November 29, 2004. A copy of this fax is attached hereto as Exhibit "B" and incorporated herein by reference.

10. Northern sent Sanders a "Collection Alert" dated February 1, 2005, which indicated that Sanders was $323.10 delinquent on the Lease.

11. Northern sent Sanders an Invoice dated February 11, 2005, which indicated that $651.20 was due and payable on receipt.

12. Northern sent Sanders an Invoice dated March 14, 2005, which indicated that $812.75 was due and payable on receipt.

13. On April 5, 2005, Sanders's representative sent a letter to Northern again notifying Northern that the Lease was fraudulent and demanding that Northern cease collection and refrain from any negative credit reporting.

14. On May 2, 2005, another letter was sent to Northern disputing Sanders's liability for the Lease.

15. On May 31, 2005, and September 29, 2005, Northern sent Sanders demands for payment of $7,942.00 on the Lease.

16. On October 24, 2005, Northern sent a "Final Legal Notice Demand for Payment," which threatened Sanders with placing a lien on real or personal property, local docketing, wage garnishment and bank executions.

17. On October 31, 2005, Sanders's representative notified Northern again that the Lease was fraudulent, that Sanders had never received any equipment from Northern, and demanded that Northern cease collection on the Lease.

18. On December 22, 2005, Sanders's representative sent letters to Equifax, Experian and Trans Union disputing the information being reported on Sanders's credit report by Northern.

19. On information and belief, Northern was notified of Sanders's dispute by the credit reporting agencies.

20. On information and belief, Northern failed to investigate Sanders's dispute and verified to the credit reporting agencies that the fraudulent information regarding the Lease was being reported correctly.

21. On January 20, 2006, Northern sent a "Demand for Payment" directly to Sanders, even though they had been placed on notice numerous times that he was represented by counsel, which indicated an outstanding balance on the Lease of $7,942.00.

22. On February 7, 2006, Sanders's representative sent a letter to Northern again notifying them that the Lease was fraudulent, and also providing them with an Affidavit from Sanders confirming that:

a. The business address on the Lease was incorrect and in Atlanta, Georgia;

b. The phone number on the Lease was incorrect and in Atlanta, Georgia;

c. The residence address on the Lease was incorrect and, according to the Post Master, did not even exist; and

d. Sanders had not received any equipment from Northern.

23. On October 16, 2006, Northern again made demand on Sanders for $7,942.00, threatened legal action against Sanders and informed him that the Lease had been "reported to the Credit Bureau."

24. On May 7, 2007, Sanders's representative notified Experian that the Lease with Northern appearing on Sanders's credit report was fraudulent.

25. On information and belief, Northern was again notified of Sanders's dispute by the credit reporting agencies.

26. On information and belief, Northern failed to investigate Sanders's dispute and verified to the credit reporting agencies that the fraudulent information regarding the Lease was being reported correctly.

27. As of the date of filing this Complaint, Northern continues to report the Lease on Sanders's credit report.

**Count I – Northern's Intentional and Willful Violation of the FCRA.**

28. Plaintiff realleges paragraphs 1 through 27 in support of this Count I.

29. Northern is a "furnisher of credit information" under the FCRA.

30. Northern provided false information to credit reporting agencies regarding Sanders's liability for the Lease.

31. Northern willfully and intentionally failed to investigate Sanders's liability for the Lease after receiving notice of a dispute from Sanders.

32. Northern willfully and intentionally failed to investigate Sanders's dispute after being notified of the dispute by the credit reporting agencies.

33. Northern willfully and intentionally verified to the credit reporting agencies that the false information regarding Sanders's liability for the Lease was correct.

34. Northern willfully and intentionally continued to report false information to credit reporting agencies regarding Sanders after being made aware that the Lease was fraudulent.

35. Northern's willful and intentional actions in reporting false information, failing to investigate Sanders's dispute, verifying the false information to credit reporting agencies after Sanders's dispute and continuing to report the false information after being made aware of this fraud constitute willful and intentional noncompliance with the FCRA for which Northern is civilly liable pursuant to 15 U.S.C. § 1681n.

36. Sanders suffered damage to his reputation and credit rating, incurred legal costs, and suffered great emotional and mental suffering as a result of Northern's willful and intentional noncompliance with the FCRA.

37. Sanders is entitled to a judgment against Defendant for such sums as are proved by the evidence to compensate Plaintiff for the damages incurred and an award for such sums as are warranted in the form of punitive damages for Defendant's willful and intentional noncompliance with the FCRA.

**Count II – Northern's Negligent Violation of the FCRA.**

38. Plaintiff realleges paragraphs 1 through 37 in support of this Count II.

39. Alternatively, Northern's actions in reporting false information, failing to investigate Sanders's dispute, verifying the false information to credit reporting agencies after Sanders's dispute and continuing to report the false information after being made aware of this

fraud constitute a negligent violation of the FCRA for which Northern is civilly liable pursuant to 15 U.S.C. § 1681o.

40. Sanders suffered damage to his reputation and credit rating, incurred legal costs, and suffered great emotional and mental suffering as a result of Northern's intentional violation of the FCRA.

41. Sanders is entitled to a judgment against Defendant for such sums as are proved by the evidence to compensate Plaintiff for the damages incurred as the result of Defendant's negligent violation of the FCRA.

**Count III - Defamation By Northern**

42. Plaintiff realleges paragraphs 1 through 41 in support of this Count III.

43. Northern reported to the credit bureaus as fact that Sanders was liable for the amount due on the Lease after Northern had been made aware that the Lease was fraudulent.

44. Northern was at fault for publishing to third parties this false information after having been made aware that the Lease was fraudulent.

45. Northern's statements to third parties regarding Sanders's liability for the Lease were intended to cause damage to Sanders, his reputation and his credit history and did, in fact, cause damage to Sanders, his reputation and his credit history.

46. Northern's false statements continue to cause damage to Sanders, his reputation and his credit history, as Northern continues to report to third parties that Sanders is liable for this fraudulent Lease.

47. Sanders, his reputation and his credit history were injured as a result of Northern's willful and malicious actions.

48. Sanders is entitled to a judgment against Defendant for such sums as are proved by the evidence to compensate him for the damage to his reputation and credit history and for his mental, emotional, and physical suffering, as well as an award for such sums as are warranted in the form of punitive damages for Defendant's willful and malicious conduct.

**Count IV - Outrage.**

49. Plaintiff realleges paragraphs 1 through 48 in support of this Count IV.

50. Northern either intended to inflict emotional distress upon Sanders, or should have recognized that emotional distress was likely to result from its illegal actions.

51. Northern intentionally threatened and misled Sanders about a debt that Northern knew was not owed.

52. In our modern society, innocent consumers, such as Sanders, are susceptible to unscrupulous practices by companies, such as Northern, who threaten unlawful collection actions and continually harass consumers for debts that are not owed. Northern attempted to extort unlawful payments by repeatedly threatening and misleading Sanders. Northern's actions in illegally threatening and misleading Sanders are utterly intolerable in a modern, civilized society.

53. Sanders experienced mental distress from Northern's false reports indicating that he had bad credit and the helplessness and frustration that resulted from his inability to have the false information removed and the collection actions stopped. His mental distress was severe and of a type that no reasonable person should be expected to endure.

54. As a consequence of Northern's willful and malicious actions, Sanders incurred damage to his credit rating, legal costs, and great emotional and mental suffering.

55. Sanders is entitled to a judgment against Northern for such sums as are proved by the evidence to compensate him for his mental, emotional, and physical suffering, and an award

for such sums as are warranted in the form of punitive damages for Northern's willful and malicious conduct.

**Jury Trial Requested.**

56. Plaintiff demands a jury trial on all issues that may be tried by a jury.

WHEREFORE, Plaintiff prays for a judgment against Defendant for compensatory damages; such sums as are proved by the evidence to compensate Plaintiff for his mental, emotional, and physical suffering; and award for such sums as are warranted in the form of punitive damages for Defendant's willful and malicious conduct; and for all other relief to which he proves himself entitled, including costs and attorney's fees.

Respectfully submitted,

James Sanders, Plaintiff,

By: ______________________________

Stephen Lisle, Lic. No. 94103
Lisle Law Firm, P.A.
1458 Plaza Place, Suite 101
Springdale, AR 72764-5273
Phone No.: (479) 750-4444